ORIGINAL

FILED

JUL 1 4 2023

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE
## WINCHESTER DIVISION

JAMES D. MCCONNELL,

        Plaintiff,

    v.

U.S. DEPARTMENT OF AGRICULTURE;
THOMAS JAMES VILSACK, in his official
capacity as the Secretary of Agriculture; KEVIN
SHEA, in his official capacity as Administrator of
the Animal and Plant Health Inspection Service,

        Defendants.

No. 4:23-cv-24

McDonough/Lee

## COMPLAINT

For more than five decades, the smooth gait and high front-leg stride of Tennessee Walking Horses have been at the center of James "Jimmy" Dale McConnell's life. Early on, Mr. McConnell had to learn everything the hard way—cleaning stables, watching other trainers, and taking any opportunity that came his way. Mr. McConnell knew the industry was tough—but he also knew there was nothing else he would rather do.

Hard work paid off. After many years of learning, practicing, riding, training—and failing, often—Mr. McConnell catapulted to the top of the walking horse industry. These renowned animals enthrall multitudes of spectators across the southeast, and Jimmy McConnell is now something of a legend in the walking horse world. He's been named trainer of the year. He's worked with any big name in the sport. And he's won all the biggest competitions. You cannot talk about Tennessee Walking Horses without mentioning Jimmy McConnell.

But now the United States Department of Agriculture ("USDA") seeks to tear down all that Mr. McConnell has created. It has brought an administrative enforcement action, claiming that out

1

of the thousands of horses that Mr. McConnell entered into competitions over the years several have been unlawfully "sored" to make their gait more distinct. Under the Horse Protection Act ("HPA"), an individual cannot enter a sore horse into competition, and if he does, he faces crushing fines and a ban from the industry. The USDA does *not* charge Mr. McConnell with soring horses. Instead, it relies on an arbitrary and unfair inspection process to argue that horses Mr. McConnell merely showed or entered into competition—often on behalf of other owners and trainers—were sore.

For nearly a decade, the USDA has prosecuted Mr. McConnell in its own in-house adjudication scheme. All the while, Mr. McConnell has aggressively argued that the entire system suffers from fundamental and structural constitutional defects. USDA has left the final decision-making authority for the department in the hands of an employee. Its administrative law judges ("ALJ") are not properly supervised and violate the separation of powers. And the adjudication process improperly denies Mr. McConnell a jury. In short: The entire system has been infected with constitutional infirmities that render it powerless to decide Mr. McConnell's case.

Mr. McConnell has repeatedly raised his constitutional challenges before ALJs since 2017 and has been rebuffed or ignored. After all that time—and an intervening Supreme Court decision—USDA has finally admitted that Mr. McConnell's constitutional claims should be heard in federal court. This is that case.

## THE PARTIES

1.      Plaintiff James "Jimmy" Dale McConnell is an individual who resides in the State of Tennessee.

2.      Defendant United States Department of Agriculture is an executive agency of the United States government headquartered in Washington, DC.

2

3.      Defendant Thomas James Vilsack is the Secretary of Agriculture and is being sued in his official capacity.

4.      Defendant Kevin Shea is the Administrator of the Animal and Plant Health Inspection Service ("APHIS") and is being sued in his official capacity.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

6.      District court jurisdiction is also proper under 15 U.S.C. § 1825(d)(6) of the HPA.

7.      Plaintiff's claims for declaratory and injunctive relief are authorized by the Federal Declaratory Judgment Act (28 U.S.C. §§ 2201–02), Federal Rules of Civil Procedure 57 and 65, and by the legal and equitable powers of this Court.

8.      Venue is proper in the Eastern District of Tennessee under 28 U.S.C. § 1391(b) and (e) because Plaintiff McConnell is a resident of Shelbyville, Tennessee, which is within this judicial district, and defendants include a United States agency and officers sued in their official capacities.

## BACKGROUND

### *Mr. McConnell's Tennessee Walking Horse Career*

9.      Mr. McConnell has dedicated much of his life to the Tennessee Walking Horse.

10.      Mr. McConnell is a licensed horse trainer who owns and operates Formac Stables, Inc., in Shelbyville, Tennessee.

11.      Formac Stables boards and trains Tennessee Walking Horses for the horses' owners.

12.      Formac Stables boards approximately five dozen horses and employs six people who care for and train the horses.

3

13.     Gaited horse breeds, like Tennessee Walking Horses, have long been admired for their elegant, high-stepping strut that comes from both careful breeding and careful training.

14.     The Tennessee Walking Horse breed was developed in middle Tennessee.

15.     Tennessee Walking Horses perform three distinct gaits: the flat-foot walk, running walk, and canter.

16.     Horse owners and trainers show the breed in competitions across the southeast United States, and the riders win some prize money.

17.     The industry's premier event is the Tennessee Walking Horse National Celebration that is held annually in Shelbyville, Tennessee, and can attract 100,000 people over the ten days of competition.

18.     For over 50 years, Mr. McConnell and employees of Formac Stables and its predecessor have prepared, groomed, and transported the horses for thousands of entries throughout the southeast.

19.     Mr. McConnell is a celebrated member of the Tennessee Walking Horse industry.

20.     Mr. McConnell has been recognized for his exemplary training of Tennessee Walking Horses.

21.     In 1985, 2004, 2010, and 2017, Mr. McConnell was selected by his peers as the Walking Horse Trainers Association ("WHTA") Trainer of the Year.

22.     Mr. McConnell has also personally shown championship-winning Tennessee Walking Horses.

23.     Mr. McConnell showed the horses that won four Grand Championships at the Tennessee Walking Horse National Celebration.

24.     Mr. McConnell has also won the Rider Cup seven times.

4

25.    In addition to his success showing and training Tennessee Walking Horses, Mr. McConnell has been a leader of the walking horse industry.

26.    Mr. McConnell served as the president of the WHTA in 1984, 1985, and from 1996 to 1998.

### The Horse Protection Act

27.    The distinctive gait of the Tennessee Walking Horse comes from time and labor-intensive training.

28.    But abusive trainers have discovered that they can create the sought-after gait by inflicting pain on the horse's pasterns or legs—a practice called "soring."

29.    In 1970, Congress passed the HPA in an effort to end the "unfair[]" practice of horse soring. 15 U.S.C. § 1821 *et seq.*

30.    The HPA defines soring as the practice of applying "irritating or blistering agent[s]," inflicting "burn[s], cut[s], or laceration[s]," inserting "any tack, nail, screw, or chemical agent," or the use of "any other substance[s] or device[s]" on the limb of a horse that cause "or can reasonably be expected" to cause "physical pain or distress, inflammation, or lameness when walking, trotting, or otherwise moving." 15 U.S.C. § 1821(3).

31.    The HPA prohibits, among other things, the showing or exhibition of sore horses and the entry of sore horses in any horse show or horse exhibition "for the purpose of showing or exhibiting." 15 U.S.C. § 1824(2).

32.    Congress amended the HPA in 1976 to increase the civil penalties for violations of the statute and to allow the Secretary to disqualify violators from "showing or exhibiting any horse, judging or managing any horse show, horse exhibition, or horse sale or auction." 15 U.S.C. § 1825(b) and (c). Both monetary and injunctive penalties can be imposed only after "notice and opportunity for a hearing before the Secretary." *Id.*

5

33. Each violation of the HPA carries a maximum civil penalty of $2,000. 15 U.S.C. § 1825(b)(1).

34. Disqualifications from showing or exhibiting horses imposed by the Secretary are "not less than one year for the first violation and not less than five years for any subsequent violation" and can be imposed only on those also ordered to pay civil monetary penalties. 15 U.S.C. § 1825(c).

35. Violations of the HPA can also carry criminal penalties. 15 U.S.C. § 1825(a).

36. The Secretary delegated administration and civil enforcement of the HPA to APHIS. *See, e.g.*, 9 C.F.R. § 11.4.

37. Horse show and exhibit management participate in the enforcement of the HPA by appointing individuals to inspect competing horses. Representatives of the Secretary also conduct inspections. In all events, inspectors follow regulations prescribed by the Secretary. 15 U.S.C. § 1823(c) and (e); 9 C.F.R. §§ 11.4 and 11.7.

38. Horse show management may appoint Designated Qualified Persons ("DQPs")— who are trained and licensed by horse industry organizations or associations—as inspectors at events to monitor for sore horses. 9 C.F.R. § 11.7(a) and (b).

39. If the DQP finds a horse to be noncompliant with the HPA, the violation must be reported to management or event sponsors, who must disqualify the horse from entry into the event. 9 C.F.R. § 11.20(b).

40. USDA can initiate enforcement proceedings for any violation of the HPA identified by a DQP, which must be reported to USDA quarterly by horse industry organizations. 9 C.F.R. §§ 11.25(f) and 11.41.

6

*USDA's home-field advantage: in-house adjudication for HPA claims*

41.     USDA enforces violations of the HPA through an in-house adjudication process and under its Uniform Rules of Practice for the Department of Agriculture. 9 C.F.R. § 12.1.

42.     The HPA requires that the Secretary conduct hearings to assess civil penalties or disqualify violators. 15 U.S.C. § 1825(b) and (c).

43.     Yet the Secretary does not do so. Under a statute predating the HPA, the Secretary may delegate "the whole or any part of any regulatory function" to any self-designated officer or employee. 7 U.S.C. § 2204-2; *see also* 7 U.S.C. § 6912(a)(1).

44.     Pursuant to 7 U.S.C. § 2204-2, the Secretary delegated his authority to conduct hearings and impose civil penalties for violations of the HPA to USDA ALJs. 7 C.F.R. §§ 1.131, 2.27.

45.     The current USDA ALJs—including Jill S. Clifton who is overseeing the adjudication of the claims against Mr. McConnell—were appointed by the Secretary.

46.     USDA ALJs enjoy two layers of protection from removal by the President.

47.     USDA ALJs are appointed under 5 U.S.C. § 3105 and can be removed "only for good cause established and determined by the Merit Systems Protection Board" ("MSPB"). 5 U.S.C. § 7521(a).

48.     MSPB members may only "be removed by the President for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

49.     USDA ALJs are empowered to rule upon motions and requests, conduct conferences and hearings, administer oaths and affirmations, issue subpoenas, hear oral argument on facts or law, and take other significant actions during the course of the administrative hearing. 7 C.F.R. § 1.144(c).

7

50.     At the conclusion of the adjudication, USDA ALJs issue an initial decision that "become[s] final without further proceedings unless there is an appeal to the Secretary." 7 C.F.R. § 2.27; 5 U.S.C. § 557.

51.     Although the HPA requires a hearing "before the *Secretary*," 15 U.S.C. § 1825(b) (emphasis added), the Secretary has, under 7 U.S.C. § 2204-2, delegated his authority to review ALJ initial decisions to the "Judicial Officer," an employee within the USDA, *see* 7 C.F.R. §§ 2.27, 2.35.

52.     An ALJ's decision must be appealed (if at all) to the Judicial Officer—not the Secretary. *See* 7 C.F.R. § 1.145(a).

53.     In an appeal of an initial decision by an ALJ, the Judicial Officer reviews the parties' briefs and the ALJ record, presides over oral argument, and issues a final decision for USDA. 7 C.F.R. §§ 1.145, 2.35(a).

54.     The Judicial Officer exercises the final decision-making power of USDA through a delegation of such power by the Secretary for all "adjudicatory proceedings subject to 5 U.S.C. 556 and 557"—including HPA adjudicatory proceedings. 7 U.S.C. § 2204-2; 7 C.F.R. § 2.35.

55.     The Judicial Officer does not hold any office created by law but is instead an agency employee to whom the Secretary delegated final decision-making authority in USDA adjudications. *See* 7 U.S.C. § 2204-2; 7 C.F.R. § 2.35.

56.     The Judicial Officer was not appointed to an office by the Secretary or any other head of department.

57.     The Judicial Officer was not appointed by the President.

58.     The Judicial Officer was not confirmed by the Senate.

59. Only decisions of the Judicial Officer are "final for purposes of judicial review." 7 C.F.R. §§ 1.139, 1.142(c)(4), 1.145(i).

60. No statute or regulation permits the Secretary to affirm, reverse, or otherwise review the decision of the Judicial Officer.

61. Delegations of authority by the Secretary to the Judicial Officer "shall be construed as … vested by law" in the Judicial Officer, not the Secretary. 7 U.S.C. § 2204-3; *see* 7 C.F.R § 2.35(a).

62. And the Secretary cannot retroactively revoke a delegation of authority. 7 U.S.C. § 2204-3.

63. As a result, the Secretary is prohibited from reviewing, affirming, modifying, or reversing the Judicial Officer's decision after it is made.

64. Persons found to have violated the HPA may obtain review of the Judicial Officer's final order from a United States Court of Appeals "for the circuit in which such person resides or has his principal place of business or in the United States Court of Appeals for the District of Columbia Circuit." 15 U.S.C. § 1825(b)(2).

65. In sum, an employee of USDA (the Judicial Officer)—who holds no office created by Congress—exercises the final decision-making authority in USDA's adjudications through nothing more than a delegation by the Secretary and without any principal-officer supervision.

66. The Judicial Officer functions as a principal officer but is not appointed by the President and confirmed by the Senate as required by the Appointments Clause of the U.S. Constitution, art. II, §2, cl. 2.

**USDA trapped Mr. McConnell in its unconstitutional scheme for nearly a decade**

67. Mr. McConnell has been embroiled in USDA's unconstitutional administrative hearing procedures since 2013.

9

68.     APHIS filed serial complaints against Mr. McConnell from 2013 to 2017 alleging he violated the HPA by, among other things, entering and showing sore horses in competitions.

69.     APHIS has not alleged that Mr. McConnell, *himself*, ever sored a horse, caused a horse to become sore, or otherwise abused any horses. Instead, it has alleged that he entered or showed sore horses without alleging who sored the horse.

70.     In the nearly a decade that has passed since APHIS first initiated enforcement proceedings against Mr. McConnell, USDA has yet to complete a hearing on any of APHIS's allegations.

71.     Presently, APHIS is pursuing nine allegations against Mr. McConnell arising from complaints filed in 2016 and 2017 (the "Pending Allegations").

72.     Eight of the Pending Allegations come from an amended complaint APHIS filed against Mr. McConnell on October 5, 2016, in HPA Docket No. 16-0169 (the "October 2016 Amended Complaint").

73.     The eight Pending Allegations from the October 2016 Amended Complaint allege that Mr. McConnell entered or showed sore horses in horse shows between September 2011 and July 2016, entered a horse bearing a prohibited substance, and withheld and misrepresented information to APHIS inspectors.

74.     The eight Pending Allegations are at paragraphs 18, 22, 27, 32, and 36–39 of the October 2016 Amended Complaint.

75.     Mr. McConnell denied all eight Pending Allegations in the October 2016 Amended Complaint.

76.     The ninth Pending Allegation was included in a February 3, 2017, complaint filed by APHIS in HPA Docket No. 17-0207 (the "February 2017 Complaint").

77.     The ninth Pending Allegation alleged Mr. McConnell entered a horse into competition while it was sore.

78.     The ninth Pending Allegation is at paragraph 102 of the February 2017 Complaint.

79.     Mr. McConnell denied the ninth Pending Allegation as well.

80.     All nine Pending Allegations are effectively allegations of common-law fraud and breach of contract for which Mr. McConnell is entitled to a jury trial.

81.     In November and December 2019, the ALJ held a two-week long partial hearing on several allegations against Mr. McConnell, including six of the Pending Allegations.

82.     Mr. McConnell has yet to put on his defense to the six Pending Allegations addressed during the November and December 2019 hearing.

### The ALJ repeatedly rejected Mr. McConnell's constitutional objections

83.     Since 2017, Mr. McConnell repeatedly raised to ALJ Clifton constitutional objections to the structure of USDA's adjudication process:

a.     On March 27, 2017, Mr. McConnell moved to dismiss the October 2016 Amended Complaint, February 2017 complaint, and earlier complaints, to disqualify the ALJ and Judicial Officer from the case, and to certify the disqualification question to the Secretary raising the following constitutional objections:

    i.     USDA ALJs are officers of the United States but are not lawfully appointed pursuant to the Appointments Clause.

    ii.     USDA's Judicial Officer unlawfully enters final decisions for USDA as an employee.

b.     On February 24, 2022, Mr. McConnell moved again to dismiss the case on the following grounds:

11

i.    USDA's Judicial Officer unlawfully enters final decisions for USDA as an employee.

ii.   The ALJs function as principal officers who are not appointed by the President and confirmed by the Senate as required by the Appointments Clause.

iii.  The ALJs are unconstitutionally shielded from removal by two layers of tenure protection.

c.    On March 28, 2022, and May 11, 2022, Mr. McConnell again objected that neither USDA ALJs nor the Judicial Officer are constitutionally supervised through review of their decisions by a principal officer and that the ALJs are unconstitutionally subject to two layers of tenure protection.

d.    On June 15, 2022, Mr. McConnell requested a jury trial on the allegations against him because APHIS's allegations amount to common law fraud claims and the agency seeks a legal remedy—and thus the Seventh Amendment guarantees a jury trial right. *Jarkesy v. Sec. and Exch. Comm'n*, 34 F.4th 446 (5th Cir. 2022), *cert. granted*, No. 22-859, 2023 WL 4278448 (U.S. June 30, 2023).

e.    On February 10, 2023, Mr. McConnell again raised his constitutional objections as described in his February 24, 2022, motion to dismiss and requested that the ALJ decide his June 15, 2022, request for a jury trial.

84.   USDA opposed Mr. McConnell's motions to dismiss, arguing, in part, that Mr. McConnell's constitutional challenges must wait until the adjudicative process ended.

85.   ALJ Clifton sided with USDA and consistently denied Mr. McConnell's motions and requests regarding his constitutional claims because she disclaimed the power to decide

constitutional challenges to the adjudication process and intended to decide the merits before reaching any constitutional issues:

    a.    On June 13, 2017, ALJ Clifton denied Mr. McConnell's March 27, 2017, motion to dismiss and motion to certify in HPA Docket No. 16-0169 because, among other reasons, Mr. McConnell's constitutional challenges "[we]re extraneous to the HPA" and cannot be adjudicated by the Office of Administrative Law Judges [OALJ] under the Rules of Practice."

    b.    During a February 15, 2022, conference call, ALJ Clifton informed the parties that she would not decide Mr. McConnell's constitutional objections to the USDA's adjudication process unless and until she issues her initial decision on the merits of the alleged HPA violations.

    c.    During a February 28, 2023, conference call, ALJ Clifton again took the position that she would hear USDA's allegations against Mr. McConnell and decide them on the merits unless and until a higher authority said she could not.

### *The Upcoming Unconstitutional Hearing*

86.    In March 2023, ALJ Clifton set a three-week in-person hearing starting October 10, 2023.

87.    USDA intends to pursue three allegations against Mr. McConnell from the October 2016 Amended Complaint and the February 2017 Complaint at the October 2023 hearing: that he showed or entered two sore horses in competitions and that he misidentified himself to APHIS.

88.    The three allegations to be heard at the October 2023 hearing are identified at paragraphs 27 and 32 of the October 2016 Amended Complaint and paragraph 102 of the February 2017 Complaint.

13

89. Employees at APHIS—an arm of the USDA—and the USDA General Counsel's office are prosecuting Mr. McConnell's case.

90. ALJ Clifton—an officer of the USDA—is hearing and deciding Mr. McConnell's case.

91. The Judicial Officer—a USDA employee acting pursuant to authority delegated by the Secretary—reviews the initial decision of an ALJ if an appeal is filed and will enter any final decision in such cases on behalf of the USDA.

92. ALJ Clifton had her appointment as an ALJ for USDA ratified by the Secretary on July 24, 2017. *See In Re: Philip Trimble*, 77 Agric. Dec. 15, 17 (U.S.D.A. June 8, 2018).

93. The prosecutor and adjudicators of the allegations against Mr. McConnell are representatives of the same agency.

94. Through its in-house adjudication, the USDA seeks to impose a civil penalty—a monetary fine—against Mr. McConnell. 15 U.S.C. § 1825(b).

95. Through its in-house adjudication process, USDA seeks to deprive Mr. McConnell of his private rights to retain his property (his money) and litigate allegations that involve the private rights of the horse shows and Mr. McConnell's fellow horse-show competitors.

96. USDA's internal adjudication process deprives Mr. McConnell of a fair hearing overseen by a neutral arbiter.

97. USDA's internal adjudication process subjects Mr. McConnell to a hearing overseen by officials who are not accountable to the President—and to the People.

98. The Pending Allegations against Mr. McConnell are effectively allegations of common-law fraud and breach of contract for which he is entitled to a jury trial.

14

99.     The USDA's in-house adjudication process for the Pending Allegations imposes a here-and-now constitutional injury on Mr. McConnell—namely, (1) the absence of a principal officer to issue a final decision in the case and supervise the inferior officer ALJs, (2) the lack of ALJs properly accountable to the president, (3) the absence of a jury, and (4) the unlawful attempt to adjudicate private rights in a non-Article III *court of law* coupled with all the protections that the Constitution provides. *See* U.S. CONST. art. III.

### *USDA agrees that Mr. McConnell's claims belong in federal court now*

100.    In *Axon v. Federal Trade Commission*, 143 S. Ct. 890, 897, 905–06 (2023), the Supreme Court held that parties making "structural" or "fundamental" challenges to an agency in-house adjudication—as Mr. McConnell is here—must receive a remedy before the hearing.

101.    Claims of unconstitutionally structured administrative adjudications can be reviewed by federal district courts where they are "collateral to any decisions the [agency] could make in individual enforcement proceedings" and "they fall outside the [agency's] sphere of expertise." *Axon*, 143 S. Ct. at 906.

102.    Like in *Axon*, Mr. McConnell is being subjected to an unconstitutional adjudication process that deprives Mr. McConnell of his right not to undergo such a process regardless of the outcome. *See Axon*, 143 S. Ct. at 903–04.

103.    Additionally, ALJ Clifton has disclaimed any authority to decide Mr. McConnell's constitutional claims under the rules of USDA's adjudication process.

104.    In a June 13, 2017, order, ALJ Clifton reasoned that Mr. McConnell's "challenge [to] the validity of the Rules of Practice ... are extraneous to the HPA and cannot be adjudicated by the Office of Administrative Law Judges [OALJ] under the Rules of Practice."

105.    The USDA concedes that a federal court must hear Mr. McConnell's case *before* the hearing.

15

106. After Mr. McConnell—in light of *Axon*—renewed his objections to the hearing on May 3, 2023, USDA offered a response on May 22, 2023, that confirmed its view that Mr. McConnell should file a federal lawsuit.

107. Citing *Axon*, USDA argued that ALJ Clifton was correct in not ruling on the constitutional challenges, because "administrative proceedings are not the proper forum in which to determine the constitutionality of an ALJ's appointment," such claims are "'collateral' to any decision that Judge Clifton could make," are "outside USDA's 'sphere of expertise,'" and "'are not "of the type" the statutory review schemes reach.'"

108. USDA contended that ALJ Clifton "cannot decide the constitutionality of her own appointment or that of her fellow ALJs, [and] she [] cannot decide the constitutionality of the JO's appointment."

109. USDA concluded that Mr. McConnell's "objection to having to go through an administrative hearing in the present matter before [his] constitutional challenges to the appointments of USDA's ALJs and JO are resolved has been presented in the wrong forum and has no merit."

110. *Axon*, ALJ Clifton's explicit rulings that she *cannot* or will not decide constitutional issues, and USDA's concessions in its filing all confirm Mr. McConnell's here-and-now injury and require that this Court enjoin the unconstitutional process.

\* \* \*

111. In sum, USDA's enforcement scheme subjects Mr. McConnell to an unconstitutional hearing, (1) without a jury required by the Seventh Amendment, (2) in violation of Article III and of the Constitution, (3) before an ALJ, who is improperly supervised, and whose

16

dual-level tenure protection violates the separation of powers, and (4) whose decision can only be appealed to a Judicial Officer who is improperly wielding principal-officer power.

112. Mr. McConnell faces a here-and-now injury of being subjected to the ongoing unconstitutional adjudication process on the Pending Allegations.

113. It is impossible to remedy this injury once the adjudication process is complete.

114. Mr. McConnell's constitutional challenges are irrelevant to the merits of the allegations against him.

115. The resolution of Mr. McConnell's constitutional challenges is outside the expertise of USDA.

116. USDA has disclaimed any authority to address Mr. McConnell's constitutional challenges in the administrative adjudication process.

117. Only a federal district court can provide Mr. McConnell with the relief he is seeking from an unconstitutionally structured USDA adjudication process.

## COUNT I: The Judicial Officer Is an Employee Exercising Principal Officer Power
### (U.S. Const. art. II, § 2, cl. 2)

118. The Judicial Officer unconstitutionally exercises principal officer power despite not holding an office created "by Law." U.S. CONST. art. II, § 2.

119. The position of Judicial Officer was created by the Secretary through regulations, not by any statute. *See* 7 C.F.R. § 1.132.

120. The Judicial Officer holds only authority delegated to him by the Secretary; he does not hold an office created by law. *See* 7 C.F.R. § 2.35(a).

121. The Secretary delegated to the Judicial Officer the power to make all final decisions for USDA in adjudications under the HPA as if the Judicial Officer was the Secretary. *See* 7 U.S.C. § 2204-3; 7 C.F.R. §§ 1.145, 2.35.

17

122.     Decisions of the Judicial Officer are "final for purposes of judicial review." 7 C.F.R. §§ 1.139, 1.142(c)(4).

123.     Delegations of authority by the Secretary to the Judicial Officer "shall be construed as … vested by law" in the Judicial Officer, not the Secretary. 7 U.S.C. § 2204-3; *see also* 7 C.F.R § 2.35(a).

124.     When the Secretary delegated final decision-making authority in USDA adjudications to the Judicial Officer, the Secretary was divested of that same power, and the Judicial Officer issues final decisions as if he were the Secretary. *See* 7 U.S.C. § 2204-3.

125.     The Secretary cannot retroactively revoke his delegations to the Judicial Officer. 7 U.S.C. § 2204-3.

126.     The Secretary cannot review final decisions of the Judicial Officer.

127.     All officers of the United States must occupy a "continuing office established by law" with appointment "created by statute, down to [the officer's] 'duties, salary, and means of appointment.'" *Lucia v. SEC*, 138 S. Ct. 2044, 2053 (2018).

128.     The Judicial Officer does not hold an office.

129.     "Only an officer properly appointed to a principal office may issue a final decision binding the Executive Branch." *United States v. Arthrex*, 141 S. Ct. 1970, 1985 (2021).

130.     The Judicial Officer is not an officer of the United States.

131.     Even if the Judicial Officer were an officer holding an office, he is improperly appointed.

132.     Principal officers of the United States must be appointed by the President "by and with the Advice and Consent of the Senate." U.S. CONST. art. II, § 2.

133.     The Judicial Officer is not appointed by the President.

18

134.    The Judicial Officer is not confirmed by the Senate.

135.    The Judicial Officer is not properly appointed as a principal officer of the United States under the Appointments Clause. *See* U.S. CONST. art. II, § 2.

136.    Even if the Judicial Officer amounts to an inferior officer, he unconstitutionally wields principal officer power because he issues final, binding decisions on behalf of the executive branch.

137.    The Judicial Officer may not issue final decisions in adjudications for USDA either as an employee or as an improperly appointed officer of the United States.

138.    The Judicial Officer's status as either an employee or an improperly appointed officer of the United States leaves USDA ALJs without the constitutionally requisite principal officer supervision.

139.    USDA ALJs, including ALJ Clifton, were appointed by the Secretary as inferior officers.

140.    USDA ALJs hold offices created by law as required by the Appointments Clause. 5 U.S.C. § 3105.

141.    Inferior officers must exercise their power under the supervision of a properly appointed principal officer. *Arthrex*, 141 S. Ct. at 1980.

142.    In agency adjudications, principal officer supervision must include the ability to review the decisions of an inferior officer.

143.    Initial decisions of ALJs in HPA adjudications are appealable only to USDA's Judicial Officer, who issues final decisions for USDA. 7 C.F.R. § 1.145(a) and (i).

144.    The decisions of USDA ALJs are not subject to review by any principal officer.

145.    USDA ALJs lack principal officer supervision, which is unconstitutional.

## COUNT II: USDA ALJs' Dual-Tenure Protection Contravenes the
## U.S. Constitution's Separation of Powers

### (U.S. Const. art. II, § 3)

146.    The Constitution requires that the President "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 3.

147.    The President's ability to remove executive officers is central to the President's executive power and his responsibility to take care that the laws are faithfully executed. *Free Enter. Fund. v. PCAOB*, 561 U.S. 477, 492–93 (2010).

148.    USDA ALJs are officers of the United States subject to the Appointments Clause.

149.    USDA ALJs enjoy two layers of tenure protection from removal by the President.

150.    USDA ALJs—including ALJ Clifton—are appointed under 5 U.S.C. § 3105.

151.    ALJs' appointed under 5 U.S.C. § 3105 can be removed "only for good cause established and determined by the Merit Systems Protection Board ['MSPB']." 5 U.S.C. § 7521(a).

152.    USDA ALJs cannot be removed by the Secretary.

153.    Members of the MSPB "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

154.    The MSPB is an independent agency that is not part of USDA.

155.    Multi-level protection from removal of an inferior officer violates "Article II's vesting of the executive power in the President" because it prevents the President from "'tak[ing] Care that the Laws be faithfully executed.'" *Free Enter. Fund*, 561 U.S. at 484.

156.    ALJ Clifton is unconstitutionally protected from removal by the President.

157.    The for-cause removal protections for ALJs are not severable because they are "a central part" of Congress's "overall scheme" of substantially independent agency adjudicators. *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring in part and dissenting in part).

20

158. Severing the ALJ for-cause removal protections also would not resolve the Secretary's inability to remove an ALJ.

**COUNT III: USDA's In-House Adjudication Violates the Seventh Amendment Jury Right**

**(U.S. Const. amend. VII)**

159. The Seventh Amendment to the Constitution provides: "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII.

160. "[T]he Seventh Amendment [] applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).

161. APHIS's allegations against Mr. McConnell are analogous to common-law fraud and breach of contract claims.

162. Mr. McConnell is accused of making material misrepresentations regarding horses he entered in competitions and withholding from and providing false information to APHIS allowing him to gain an advantage over those competitors who complied with the prohibition on the entry of sore horses.

163. Mr. McConnell is also effectively accused of violating the rules he agreed to follow when entering horses in the relevant competitions.

164. The Seventh Amendment applies when the government seeks legal remedies, such as monetary damages or civil penalties. In fact, *any* claims in federal court that seek legal remedies such as civil penalties require a jury. *Tull v. United States*, 481 U.S. 412, 418–22 (1987).

165. The HPA empowers APHIS to seek and collect civil penalties—a legal remedy— through USDA's in-house adjudication process. 15 U.S.C. 1825(b).

166.     The allegations against Mr. McConnell are not public rights that Congress can assign to administrative agencies for resolution.

167.     The HPA assigns to USDA private right claims of fraud and breach of contract that Mr. McConnell's fellow competitors and the competitions themselves could bring against him to redress the unfair practices in which APHIS alleges he engaged.

168.     Neither of these types of claims are "matter[s] that can be pursued only by grace of the other branches." *Stern v. Marshall*, 564 U.S. 462, 493 (2011).

169.     USDA can impose civil monetary penalties against Mr. McConnell if he is found to have violated the HPA. 15 U.S.C. § 1825(b)(1).

170.     Mr. McConnell has a private right in his property in the form of the civil monetary penalties USDA is attempting to extract from him.

171.     USDA can disqualify Mr. McConnell "from showing or exhibiting any horse, judging or managing any horse show, horse exhibition, or horse sale or auction for a period of not less than one year for the first violation and not less than five years for any subsequent violation." 15 U.S.C. § 1825(c).

172.     Mr. McConnell has a private right in his lawful business and career, which USDA can take away from him through a disqualification order.

173.     USDA's in-house adjudication process does not involve an "'expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination and determination by [USDA].'" *Stern*, 564 U.S. at 494.

174.     USDA administrative adjudication under many of the statutes enforced by USDA can be heard by an ALJ. 7 C.F.R. § 2.27.

22

175. Appeals from initial decisions of USDA ALJs in adjudicatory proceedings covered by the APA, among others, go to the Judicial Officer. 7 C.F.R. § 2.35(a).

176. USDA has a uniform set of rules governing the adjudication of claims under 38 statutes in addition to the HPA. 7 C.F.R. § 1.131.

177. The USDA's in-house adjudication process does not include a jury trial.

178. The USDA's in-house adjudication process denies Mr. McConnell his Seventh Amendment right to a jury trial.

### COUNT IV: USDA's In-House Adjudication Violates Article III

### (U.S. Const. art. III)

179. The Constitution vests the "judicial Power of the United States" "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST. art. III, § 1.

180. The Constitution does not vest the judicial power of the United States in the executive branch.

181. USDA cannot wield the "judicial Power" of the United States.

182. The adjudication of private rights disputes is the core of the judicial power.

183. The same private rights analysis for the availability of the jury trial under the Seventh Amendment is applicable to whether Congress can "assign adjudication of that cause of action to a non-Article III tribunal." *Granfinanciera*, 492 U.S. at 53.

184. If a statutory claim ultimately adjudicates a private right, it must be adjudicated by an Article III court.

185. USDA's in-house adjudication process for alleged HPA violations adjudicates private rights.

23

186.    The HPA effectively codifies private right claims for fraud and breach of contract that Mr. McConnell's fellow competitors and the competitions themselves could bring against him to redress the unfair practices in which he is alleged to have engaged.

187.    Neither of these claims are "matter[s] that can be pursued only by grace of the other branches." *Stern*, 564 U.S. at 493.

188.    USDA can impose civil money penalties against Mr. McConnell if he is found to have violated the HPA. 15 U.S.C. § 1825(b)(1).

189.    Mr. McConnell has a private right in his property in the form of the civil monetary penalties USDA is attempting to extract from him.

190.    USDA can disqualify Mr. McConnell "from showing or exhibiting any horse, judging or managing any horse show, horse exhibition, or horse sale or auction for a period of not less than one year for the first violation and not less than five years for any subsequent violation." 15 U.S.C. § 1825(c).

191.    Mr. McConnell has a private right in his lawful business and career, which USDA can take away from him through a disqualification order.

192.    USDA's in-house adjudication process does not involve an "'expert and inexpensive method for dealing with a class of questions of fact which are particularly suited to examination and determination by [USDA].'" *Stern*, 564 U.S. at 494.

193.    USDA administrative adjudication under many of the statutes enforced by USDA can be heard by an ALJ. 7 C.F.R. § 2.27.

194.    Appeals from initial decisions of USDA ALJs in adjudicatory proceedings covered by the APA, among others, go to the Judicial Officer. 7 C.F.R. § 2.35(a).

24

195. USDA has a uniform set of rules governing the adjudication of claims under 38 statutes in addition to the HPA. 7 C.F.R. § 1.131.

196. USDA is neither an Article III court nor an Article III agency.

197. No Article III judge oversees hearings through the USDA in-house adjudication process.

198. It is unconstitutional for the claims against Mr. McConnell to be adjudicated outside of an Article III court.

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests that this Court issue:

1. A judgment pursuant to 28 U.S.C. § 2201 declaring that the Secretary's delegation of final decision-making authority in USDA adjudications to the Judicial Officer violates the United States Constitution's Appointment's Clause, Art. II, § 2, cl. 2; and a permanent injunction of the pending administrative enforcement proceedings against Mr. McConnell.

2. A judgment pursuant to 28 U.S.C. § 2201 declaring that USDA's ALJs are unconstitutionally supervised in violation of the United States Constitution's Appointments Clause, Art. II, § 2, cl. 2; and a permanent injunction of the pending administrative enforcement proceedings against Mr. McConnell.

3. A judgment pursuant to 28 U.S.C. § 2201, declaring USDA's dual-tenure protection violates the United States Constitution's separation of powers in Article II; and a permanent injunction of the pending administrative enforcement proceedings against Mr. McConnell.

4. A judgment pursuant to 28 U.S.C. § 2201, that the USDA's administrative enforcement scheme violates the United States Constitution's Seventh Amendment right to a jury trial; and a permanent injunction of the pending administrative enforcement proceedings against Mr. McConnell.

25

5.      A judgment pursuant to 28 U.S.C. § 2201, that the USDA's administrative enforcement scheme violates Article III of the United States Constitution; and a permanent injunction of the pending administrative enforcement proceedings against Mr. McConnell.

6.      A preliminary and permanent injunction prohibiting USDA from enforcing the HPA against Mr. McConnell under USDA's current administrative enforcement scheme.

7.      A preliminary and permanent injunction prohibiting USDA from enforcing the HPA against Mr. McConnell without a jury outside of an Article III court.

8.      An award of reasonable attorney fees and costs, pursuant to 28 U.S.C. § 2412, or any other applicable authority.

9.      Grant such other relief as the Court finds just and proper.

DATED: July 13, 2023.

Respectfully submitted,

JOSHUA M. ROBBINS*
Virginia Bar No. 91020
JOHN KERKHOFF*
Ohio Bar No. 0097134
CALEB KRUCKENBERG*
D.C. Bar No. 1617890
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd.
Suite 1000
Arlington, Virginia 22201
Telephone: (916) 309-6930
JRobbins@pacificlegal.org
JKerkhoff@pacificlegal.org
CKruckenberg@pacificlegal.org

DAVID BROILES*
Texas Bar No. 03054500
2400 Indian Cove St.
Ft. Worth, TX 76108
Telephone: (817) 246-7801
davidbroiles@gmail.com

26

*Attorneys for Plaintiff*
*\*Pro Hac Vice applications forthcoming*

27